UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

Carlos E. Aponte Sobrado,
        Movant,

V.                                         Case No.: 09-228-(FAB)-(2)

United States of America,
        Respondent.

The Law of The Case Doctrine Motion,
Based on Holloway S. Ct. 1999,
Dismiss Carjacking Statutes
18 U.S.C. §2119 Without Mens Rea

Petition to Recall Mandate
Violation Rule 60(d)(3) Set aside a Judgement for fraud on the Court .

The movant comes now to Honorable Court, in Pro-Se manner pursuant to Rule 60(d)(3). Based on the extraordinary of situations under the exception(s) of the Law-of-The-Case Doctrine, did not err in Granting motion to dismiss Carjacking after a Jury convicted Carlos Aponte-Sobrado of aiding and abetting with others in the commission of a Carjacking in violation of 18 U.S.C. §2119. Aponte-Sobrado argued that the government's evidence was insufficient to support the Jury's Conclusion that he possessed the requisite specific intent to violate the Federal Carjacking statute. (See Exhibit "A", Exhibit "B" Page 4, and Exhibit "C" Page 7)

## Carjacking Penalties

The federal carjacking statute punishes whoever, with the intent to cause death or serious bodily harm, takes a motor vehicle from the person or

1

presence of another by force and violence or by intimidation, or attempts to do so. 18 U.S.C. §2119. Like much of federal criminal law, Congress enacted the Carjacking statute pursuant to its authority under the Commerce Clause.

### Government / Legislation / Interpretation

The Supreme Court has stringently construed the mens rea requirement of Federal Criminal statutes to ensure that expansive interpretations of those statutes intent provisions do not transform relatively minor states offense into Federal felonies.

### Criminal Law & Procedure / Trials / Burden of Proof / Prosecution

The specific intent required by the federal Carjacking statute encompasses both unconditional and Conditional intent at the moment the defendant demanded or took control over the vehicle. In other words, the government must prove that a defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car.

### Carjacking Elements

Touching or threatening a victim while brandishing a firearm is sufficient evidence of intent to cause death or seriously bodily harm within the meaning of 18 U.S.C. §2119.

Possession (or lack) of a weapon is significant in Federal Carjacking because proving intent under U.S.C. §2119 is a cut-and-dried endeavor where the defendant utilized a loaded firearm to take the vehicle or carried, brandished, or used a weaon such as a knife or a baseball bat.

To distinguish intent to cause death or serious bodily harm from a mere empty threat, 18 U.S.C. §2119 requires evidence of more than just

intimidation.

## Criminal Law & Procedure

Where, at best, viewing the evidence in the light of most favorable to the government gives equal or nearly equal circumstantial support to theories of guilt and innocence, that is not good enough to meet the government's burden to prove its case beyond reasonable doubt.

The movant explaining that no reasonable trier of fact could find from the evidence presented at trial that Aponte-Sobrado possessed the intent to seriously harm or kill, if necessary, at the time co-defendant took the car. See 18 U.S.C. §2119.

The evidence presented at trial tells the story of a Co-defendant government witness. The evidence here is not sufficient for a reasonable factfinder to conclude that Aponte-Sobrado possessed the requisite mens rea.

## Standard of Review

On consideration of the evidence "in its totality", meaning that "individual pieces of evidence that might not be enough on their own...might add up to tell the tale" of the defendants guilt beyond a reasonable doubt. United States v. Guzman-Ortiz, 975, F.3d 43, 54 (1st Cir. 2020). But, just as" "a judge may not pursue a 'divide and Conquer' strategy in considering whether the circumstantial evidence adds up..., neither may a judge stack inference upon inference in order to uphold the jury's verdict." Id. at 55 (quoting United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995)). "If the evidence, when viewed in the light most favorable to the government, gives equal or nearly equal circumstantial support to theories of guilty and innocence, the convictions must be reversed." United States v. Martin, 228 F. 3d 1, 10 (1st Cir. 2000) (quoting United States v. Andujar, 49 F.3d 16,

20 (1st Cir. 1995)).

## The Federal Carjacking Statute

In its decisions policing the boundry between Federal and State criminal Law, the Supreme Court has cautioned that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance' in the prosecution of crimes". <u>Jones v. United States</u>, 529 U.S. 848, 858, 120 S. Ct. 1904, 146 L. Ed. 2d 902 (2000)(quoting <u>UNITED STATES v. Bass</u>, 404 U.S. 336, 349, 92 S.Ct 515, 30 L. Ed. 2d 488 (1971)); accord Bond, 572 U.S. at 860. The Court has stringently construed the mens rea requirement of federal criminal statutes to ensure that expansive interpretations of those statute's intent provisions do not "transform relatively minor state offenses into federal felonies." <u>Rewis v. United States</u>, 401 U.S. 808, 812, 91 S. Ct. 1056, 28 L. Ed. 2d 493 (1971); <u>See also Fowler v United States</u>, 563 U.S. 668, 684, 131 S. Ct. 2045, 179 L.Ed 2d 1099 (2011)(Scalia, J. Concurring)(Cautioning against construing a federal statute's men rea requirement in a way that would "federalize crimes" that lack a federal Nexus).

The federal Carjacking statutes reflects the congressional intent to target "a particular type of robbery" with the goal of deterring especially violent crime. <u>Holloway v. United States</u>, 526 U.S. 1, 8-9, 119 S. Ct. 966, 143 L. Ed. 2d1 (1999); <u>United States v. Applewhaite</u>, 195 F. 3d 679, 685 (3rd Cir. 1999); <u>United States v. Rosario-Diaz</u>, 202 F.3d 54, 63 (1st Cir. 2000) (describing congressional intent to narrowly define §2119's mens rea element). To ensure that federal jurisdiction does not extent "beyond the point envisions by congress and intrude into realms specifically (2022 U.S.

4

App. LEXIS 14) left to" the states and territories, the mens rea element is narrow in two respects. United States v. Diaz-Rosado, 857 F.3d 116, 125 (1st Cir. 2017)(Torruella, J. Concurring).

Generally, the key fact distinguishing a situation in which a defendant possesses the requisite specific intent from a situation in which a defendant merely makes an "empty threat", Holloway, 526 U.S. at 11, is the defendant's actual and willing use of force in carrying out the Carjacking. E.g., Diaz-Rosado, 857 F.3d at 121; Rodriguez-Burrios, 573 F.3d at 66-67. Even "placing a cold and hard item to a victim's neck" --behavior that the victim likely would interpret as a threat involving a weapon— and "saying drive, drive, drive, drive" has been held insufficient to establish §2119's requisite intent, absent evidence that the defendant actually had a weapon or threatened to harm the victim. United States v. Bailey, 819 F.3d 92, 97 (4th Cir. 2016)(third (2022 U.S. App. LEXIS 16) alteration in original).

### Application

To establish 2119's intent element, the government had to prove that Aponte-Sobrado "would have at least attempted to seriously harm or kill...if that action had been necessary to complete the taking of the car." Holloway, 526 U.S. at 12. Applewhaite, 195 U.S.. At trial the government bore the burdens of persuasion and production on the intent element of the crimes. See Pothier, 919 F.3d at 148; See also Jackson v. Virginia, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ("No person shall be made to suffer the onus of a criminal conviction except upon sufficient proof— defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of very element of the offense.") (See Exhibit "B" Page 2 Par. 6, Page 4 parr. 2 and Page 6 parr.2)

5

But this rationale ignores Holloway's admonition that an empty threat or intimidating (2022 U.S. App. LEXIS 17) bluff, standing on its own, cannot satisfy §2119's intent requirement. See Holloway, 526 U.S. at 11. Accepting the governments argument would collapse Holloway's distinction between an empty threat and a credible manifestation of intent to harm. This is exactly the type of conflation Congress sought to avoid by imposing the stringent mens rea requirement. See id. at 11-12. Because an empty threat does not satisfy this requirement, it was necessary for the district Court to consider. (See Exhibit "c" page 7 parr. 2).

Government witness testimony indicated that Aponte-Sobrado was present at the crime scene before and after the taking of the vehicle, but the government witness took possession of the car. Intent "at the moment the co-defendant demanded or took control over "the caris an element of the federal crime of carjacking. United States v. Diaz-Rosado, 857 F.3d 116, 121(1st Cir. 2017)(quoting Hallowway v. United States, 526 U.S.1, 12, 119 S. Ct. 966, 143 L.Ed 2d 1 (1999)). If the Co-defendant did not posses the requisite intent at the moment they took possession of the car, there wan no federal carjacking crime. (See Exhibit "D" page 5, and page 2)

Aponte-Sobrado never here on the crime scene, because Antonio Velez (witness and Co-defendant) and owner by the auto body shop identify every person that different car to arrive at the Auto Body Shop and never mentioned and not identify Mr. Aponte-Sobrado on any car. (See Exhibit "E" Pages 1, 2, and 3)

During the trial, the government did not present evidence or argue that Aponte-Sobrado had a weapon. But on the indictment Aponte-Sobrado is charged with §924(c) Count 3, but the Jury's verdict is not Guilty on §924(c). (Se

Exhibit "F" Pages 1-7)

## Law of The Case Doctrine

The Law of the Case Doctrine posits that when a Court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. The Law of the Case Doctrine has two branches. One branch is the madate rule, which prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case. Put bluntly, the mandate rule requires that the trial court conform with the directions of the appellate court on remand. Because the mandate rule is embedded within the Law of the Case Doctrine, it follows that the court may raise an abridgement of the mandate rules sua sponte.

The second branch of the Law of Case Doctrine contemplates that a legal decision made at one stage of a criminal or civil proceedings should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court.

## The Government Did Not Engage in improper Witness Vouching

Improper vouching occurs when the government places the prestige of the United States behind a witness by making personal assurances about the credibility of a witness or implies that the jury should credit the government's evidence simply because the government can be trusted. An argument by a prosecutor, however, that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching. Statements by a prosecutor that are a logical counter to the assertions of defense counsel, made in summation, that various

7

government witness had fabricated their testimony are not necessarily considered to be vouching.

## The Government Established A Violation

The knowing and willing participation of defendant Aponte in the conspiracy was even more evidence from the evidence produced at trial. Co-defendant's Hernandez, Herrera, and Rosario all testified that defendant Aponte were present at the meeting in Plaza Encantada, where (2012 U.S. Dist. LEXIS 8) they met just hours before the illegal car stop and discussed the details of the scheme, which include the use of co-defendant Hernandez and his police vehicle. (Docket Nos. 610 at 75-80; 614 at 86-88; 661 at 56-58.) Defendant Aponte were present during the illegal car stop, where they witnessed the use of Co-Defendant Hernandez's police vehicle during the intervention. (Docket No. 614 at 101-105.) The evidence at trial demonstrates that there was sufficient evidence to find defendant Aponte guilty of conspiring to "injure, oppress, threaten, or intimidate" the victim. (But Hernandez never mention defendant Aponte on 302 from 9-29-2008 and during that trial.)

(See Exhibit "G" pages 1, 2, and 3.)

## The Government Did Not Engage in Improper witness Vouching

The defendant finally assert that prosecutorial misconduct during the government's rebuttal argument warrants that the defendant conviction be vacated. (Docket No. 754 at 6-9.) The government counters that their rebuttal arguments were in direct (2012 U.S. Dist LEXIS 10) response to the defendant closing argument's and that the government's comments were based on facts (847 F. Supp. 2d 321) brought out at trial and already before the

8

jury. (Docket No. 779 at 8-15.) The Court has conducted an independent review of the record, and addresses the defendant allegations below.

The language in the government's rebuttal argument at issue consists of the following statements:

MR. CONTRERAS: But let me tell you something else. They know (indicating) if they do not tell the truth they're not going to jail for 30 years, they're going to jail for life. Forever, no possibility of parole, do not collect $200. Life. That's not an incentive to lie, that's an incentive to tell the truth. And every cooperator testified, even Alexis who's free on bond, said that. Life. Forever. You miss one step on that witness stand, life. You think the Government, these prosecutors, are going to file a motion for downward departure if—

MR. MIRANDA: Objection, Your Honor. He's vouching. He's vouching.

MR. CONTRERAS: I said "the Government," Your Honor. I'll withdraw the comment "these prosecutors". That comment's withdrawn. Do you think the Government is going to file a motion for downward departure if there's a scintilla of evidence that these witnesses have not told the truth? Have not testified—

MR.MIRANDA: Your Honor, that's vouching.

MR. CONTRERAS: I withdraw "not tell the truth." Have not testified untruthfully? (2012 U.S. Dist. LEXIS 12) It's not going to happen. It is not going to happen. And let me tell you something about all this to-do about inconsistent statements. That actually shows they were credible. The Government could have put—they could have put all the cooperators in a room and say: Let's get this story straight. Work it out. You guys, all five of

9

you, get in that room and you come out with a story that's consistent. I don't want you leaving that room until the story's consistent so the jury knows you're telling the truth. ...

He has no promises - so he actually has no promises from the Government. You know the only promise he has?. That if he testifies truthfully, we might file a motion for downward departure. If you testified truthfully. Not if they convict. I'm going to tell you right now, the Government is submitting to you the result of this trial has nothing whatsoever to do with whether these cooperators get a motion for downward departure. Is has nothing -

MR.MIRANDA: Objection.

THE COURT: What's the objection?

(847 F. Supp. 2d 322) MR.MIRANDA: Vouching.

THE COURT: Overruled.

MR.CONTRERAS: And that fact is in evidence. It has nothing to do with it whatsoever. And even if the Government does file a motion for downward departure, (2012 U.S. Dist. LEXIS 13) it's the judge that ultimately decides the sentence. The Government could file the motion, ask for time served, the judge can give life. Okay? Life. And I don't want to belabor the point too much, but it has to be slammed home. The incentive in this case is to tell the truth. Not to lie. Any of those witnesses lie on the stand, they're going to jail for life. That's a huge incentive to tell the truth. (Docket No. 766 at 84-99).

## STATEMENT OF FACTS

(1) On September 13, 2012 Carlos Aponte-Sobrado was sentenced to be imprisoned for the remainder of his natural life. Mr. Aponte-Sobrado was found guilty by a jury to Counts one, two, five, and six of the superseding indictment in Criminal No. 09-228.

(2) Noel Rosario Colon, a Government witness in this case, who testified against Mr. Aponte-Sobrado, perjured his testimony to the Grand Jury and in Trial while the prosecution had knowledge of the perjured testimony.

(3) Ricardo Herrera Manino, a Government witness in this case, who testified against Mr. Aponte-Sobrado, perjured his testimony in Trial while the prosecution had knowledge of the perjured testimony.

(4) Alexis Cirino, a witness who's statements were used to gather intelligence in this case, was unable to identify Mr. Aponte-Sobrado in a photo line-up. This information was not disclosed by the prosecution.

(5) Romulo Enrique Bello, a Government witness, perjured his testimony in a 302 to Agents, this information placed Mr. Aponte-Sobrado in crimes that he was never apart of, this perjured testimony was never disclosed by the prosecution either.

(6) Lastly, On September 19, 2011, Mr. Aponte-Sobrado was found guilty by a jury that made its credibility determinations based on the witnesses who testified.

A. <u>Violation Rule 60(d)(3) Set aside a Judgement for fraud on the Court</u>

<u>Evidence to Fraud on the Court by Purjured Testimony</u>

The court stated in United States v. Conley 103 F. Supp 2d 45 (1st Cir. 2000) when the newly discovered evidence is the existence of perjured testimony on the part of one or more government witness, the Wright Standard applies: The conviction should nonetheless stand unless the force of the newly discovered event (ie, the fact and nature of perjury) and the content of the corrected testimony are such that an acquittal probably would result upon retrial.

In this case the Petitioner shows evidence of the government witnesses use of perjured testimony first, to the Grand jury and again in trial, all while the prosecution has full knowledge of said perjury.

If the newly discovered evidence was unknown to the government and its agents, the defendant must show an actual probability that an acquittal would have resulted if the evidence had been available. If, however, the newly discovered evidence was known to the government or its agents, a different standard applies.

In the Brady case, the United States Supreme Court held that "Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. United States v. Cunan 152 F. 3d 29, 33 (1st Cir. 1998)

The prosecutor's affirmative duty to disclose such evidence is

12

applicable even where the accused has not requested the disclosure. United States v. Agurs 427. U.S. 97, 107, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976) Also, the Brady rule encompasses both evidence known to the prosecutor and evidence known only to police investigators. This places on the prosecutor a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including police.

The Petitioner will show evidence of government witnesses not being able to identify the accused, of having incorrect timelines of meeting the accused, all while the prosecution having knowledge of perjured testimony. By the known use of perjured testimony, an ensuing conviction cannot stand, and there us no occasion to speculate upon what the jury would have done without the perjured testimony before it.

In this case the underlying offense was carjacking that resulted in death. The Petitioner was sentenced to life, all others involved in this case have been released or are soon to be released. the Government witnesses delineated perjured testimony while the prosecution had knowledge that the Petitioner was incarcerated, or unidentified during testimony in trial and to the Grand Jury. The allegation that perjured testimony was knowingly used to secure his conviction **must be** assumed to be true and makes a prima facie showing of the denial of the prisoner's due process rights under the Fourteenth Amendment. Williams v. Kaiser, 323 U.S. 491, 474 65 S. Ct. 363, 89 L.Ed. 398

It is well settled that such unscrupulous conduct by the prosecution is a denial of due process of law. Mooney v. Holhan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791

13

B. Evidence of perjured Testimony

AUSA BAZAN had knowledge that the Petitioner was in State prison from September 1, 2005 and was released on May 1, 2008 (See Exhibit *H, H1* and *H2*) The crime that ensued in conviction in this case happened on May 21, 2008, twenty days after the release of the Petitioner from State prison/ Noel Rosario Colon was a Government witness used in this case to testify against the Petitioner. On page 9, line 22-25 of Noel Rosario Colon's sworn Statement, under oath to the Grand jury, Colon is asked by AUSA BAZAN "You had known Carlos Aponte Sobrado for a few months before the 21st of May 2008?" In which Colon responds "Yeah". (See Exhibit *I*) At no time during this testimony did the prosecution stop the witness or correct the witness from delivering perjured testimony. On 8/16/11 in trial, under oath, Document 664 pg 12 lines 24, 25, Also Document 664 pg 13 lines 1-3, Noel Rosario Colon is asked by the Court "Okay. So when did you meet Mr. Aponte-Sobrado?" in which he answers "A few months before the incident". The Court repeats Noel's answer "A few months before", and Noel answers the question "Yes, Sir." (See Exhibit *I1* and *I2*) On 8/16/11 Document 664 pg 13 lines 17-20, Counsel ask Noel Rosario Colon "Have you ever told anybody that you met Kiko (meaning the Petitioner) four or five months prior to May 21st, 2008?" and Noel answers "I could have". (See Exhibit *I2*) When the prosecution is or should be aware that it is presenting perjured testimony, a Strict standard of materiality will be applied, and/or conviction will be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Conviction obtained by knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome of the trial. A new trial is required if perjured testimony could in any reasonable likelihood have affected the judgment of the jury. US v. Agurs, 427 US 97, 49 LEd2d 342, 96

SCt 2392 (1976)

The prosecutor in this case, had an affirmative duty to disclose that the Petitioner was in prison at the time that the government witness's said that they met him, or did crimes with him. Agents also interviewed other witness who were unable to identify the Petitioner in photo lineups, yet the prosecutor did not disclose this information to the jury.

Ricardo Herrera Manino was another witness that the government used to obtain a conviction. On November 6th, 2008, only five months after the carjacking that Ricardo Herrera Manino participated in, he was interviewed by Special Agent Means and shown a photo spread that had Kiko (meaning the Petitioner) in it. (See Exhibit J6) Ricardo could not identify the Petitioner, and the prosecution failed to reveal this evidence on Document 620 pg 31 lines 13-25 and Document 620 pg 32 lines 1-7 and line 12 (See Exhibit J, J1, J6). On 8/1/11 Document 620 pg 21 lines 15-24, under oath, in trial, Ricardo Herrera Manino looks all over the courtroom and admits on line 22 that he "could not identify the person", (meaning the Petitioner) during Thursday's testimony (See Exhibit J2). On 8/1/11 Ricardo made a decision to change his sworn testimony. Document 620 pg 25 lines 12-16 the Court ask "were you able to identify him as he walked out that side door?" in which Ricardo responds "Before. I identified him before." (See Exhibit J3) Other evidence of culpability does not cure tainted identification.

One may ask was Ricardo Herrera Manino promised the reason for falsehood in his testimony. A cooperation agreement can provide ammunition for the defense to impeach the creditability of a government witness, both by specifying the benefits the cooperator has received or will receive if he

15

testifies at the government's behest and also by revealing the witness's criminal background or other prior wrong doing. The Petitioner's Sixth Amendment right is to have all evidence proven beyond a reasonable doubt to a jury, not simply to have the government put a surfeit of evidence into a record. If the prosecution would have revealed that the Government witnesses statements were perjured, this disclosure would have affected the outcome of the district court proceedings.

Also the court should note that on July 2, 2009 in a sworn testimony to the Grand Jury, Ricardo Herrera Manino states on pg 46 lines 24 and 25 "When Noel and Kiko arrived, you know, they were talking to what we call the source (See Exhibit J4) On page 47 lines 5 and 6 Ricardo Herrera Manino identifies "the source" as Alexis (See Exhibit J5) Alexis Cirino's 302 dated 10/21/2008, in the third paragraph, Alexis is shown photo spreads, and identifies everyone involved in the carjacking/murder. (See Exhibit K) Everyone, except "the Petitioner". In a 302 dated 10/29/2008, pg 2 paragraph 5, Alexis is shown another photo spread and identifies "the Petitioner" as the other man in the Sequoia that night". (See Exhibit K1)

> Primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place. PERRY V. NEW HAMPSHIRE, __ US __, 181 LEd2d 694, 132 SCt 716 (2012)

If Alexis had already identified the persons in the carjacking/murder, one must ask why would Agents find it necessary to re-show the photo spread to ALexis. "The Source" had already advised and identified the individuals in volved in the carjacking/murder. Government witness were unable to identify the Petitioner a number of times. One must ask if the "Kiko" in this case is the Petitioner. In Neil v. Biggers, the court further explained that "it is the likelihood of misidentification which violates a defendant's right

to due process." Neil v. Biggers 409 U.S. 188, 198 (1972).

In U.S. v. Garcia-Avarez, 541 F.3d 8, 13, 15 (1st Cir. 2008) The identification was reliable because the witness was able to identify the suspect with 90% certainty based on a lineup. Why would the prosecution use witness who could not identify the Petitioner or who stated that they met the Petitioner months before the crime. Plain error is obvious here.

The test for plain error under United States v. Olano proceeds in four steps and requires the defendant to prove that there was (1) an actual error (2) that is plain or obvious, (3) that affected "the outcome of the district court proceedings", and (4) that "seriously affected the fairness, integrity or public reputation of judicial proceedings." United States v. Olano 507 U.S. 725, 731, 113, S. Ct. 1770, 123 L.Ed.2d 508 (1993) The public legitimacy of our justice system relies on procedures that are neutral, accurate, consistent, trustworthy, and fair, and that provide opportunities for error correction. Rosales-Mireles v. United States, __ U.S. __, 138 S.Ct. 1897, 201 L.Ed.2d 376 (2018)

Romulo Enrique Bello-Negron, was another witness used in this case for the conviction of the Petitioner. In Romulo's 302 dated 6/10/2010, pg 2 in the fourth paragraph, Romulo states "One day in early 2007, Rick called Romi for a job and they left together." (See Exhibit L) On pg 3, the first sentence, Romulo states "Romi, Rick, Nuni, and Roco, did approximately four jobs/robberies together" (See Exhibit L1) The second and third paragraphs of pg 3 of Romulo's 302 includes Kiko a.k.a. the Petitioner in two of these four jobs. (See Exhibit L1) The Petitioner could not have been in any one of these jobs that took place in 2007, due to the fact that the Petitioner

was still incarcerated (See Exhibit L, L1, L2) What's more is that on 8/23/11 in trial, under oath, pg 11, of Romulo's trial transcript, lines 23-25 and pg 12 lines 1-18, Romulo is asked by counsel when did he meet the petitioner, in which he responds "It must have been maybe the end of 2007". (See Exhibit L2 and L3) The Due Process clause safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial. Rivera v. Illinois, __ US __, 173 LEd2d 320, 129 SCt 1446 (2009)

The term "prosecutorial misconduct" coves a broad swath of improper conduct by the state's attorney that may impair an accused's Constitutional right to a fair trial. US v. Santos-Rivera, 726 F3d 17 (1st Cir. 2014)

C. CONCLUSION

The Government witness's in this case violated 18 USCS §1621. Perjury generally, and 18 USCS §1623 False declarations before grand jury or court. No amount of due process subsequent to a judgment of conviction, if it fails to give relief against a Constitutional error occurring at the trial, can wash away the fact, if it be a fact, that the Petitioner's conviction was obtained in denial of his Constitutional rights. Since this conviction was obtained all while the prosecution had knowledge of perjured testimony, the petitioner has a right to invoke the Due Process Clause against his conviction. See Hysler v. Florida, 1942, 315 U.S. 411, 413, 62 S.Ct. 688, 690, 86 L.Ed. 932

In light of the foregoing the Petitioner respectfully ask that this court grant any relief entitled by lay, liberty and equity.

CERTIFICATE OF SERVICE

I Carlos E. Aponte Sobrado, Movant, Certify that a true and Correct copy of this Motion to The Law of The Case Doctrine Based on Holloway S. Ct. 1999, Dismiss Carjacking statutes 18 U.S.C. §2119 Without Mens Rea with Petition to Recall Mandate was Furnished through U.S. Postal Service to the Clerk of Court at United States District Court of Puerto Rico, Room 150 Federal BLDG, San Juan, P.R. 00918-1767.

/s/ *Carlos E. Aponte Sobrado*    8/8/2024 @ 10:00 AM
Carlos E. Aponte Sobrado
Fed. Reg. No.: 33841-069
Federal Correctional Institution
2680 Highway 301 South
Jesup, Georgia 31599